**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SERGEANT GLENN ORES<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE OF DOLTON, an Illinois Municipality; BOLDEN JONES, individually as Police Chief of the VILLAGE OF DOLTON,<br><br>Defendants. | ) | Case No. 13-cv-01097<br><br>Judge Edmond E. Chang<br><br>Magistrate Geraldine Soat Brown |

***PLAINTIFF GLENN ORES' MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT***

NOW COMES the Plaintiff, GLENN ORES, by and through his attorney, WALSH LAW GROUP, P.C., and in accordance with Federal Rules of Civil Procedure 56 and Local Rule 56.1, presents his Memorandum in Support of his Motion for Summary Judgment, and in support thereof, submits the following:

***INTRODUCTION***

In 2011, Plaintiff Glenn Ores ("Sgt. Ores") was a sergeant with the Village of Dolton Police Department. Plaintiff's Statement of Additional Facts, Paragraph 1 ("Pl. Stmt. ¶ 1"). The Chief of Police at that time was Defendant Bolden Jones ("Jones"). Pl. Stmt. ¶ 2. On May 6, 2011, there was an incident where two Dolton police officers had to use force against a non-compliant woman. Pl. Stmt. ¶ 4. Sgt. Ores was the supervisor that evening and was leaving for an extended vacation the following day. *Id.* He was not at the scene of the incident between the two Dolton police officers and the combative woman. *Id.*

After his shift was over and Sgt. Ores was leaving the department locker room, he was notified of the incident by Officer David Graham ("Officer Graham"). *Id.* Sgt. Ores did not immediately act upon Officer Graham's report because the subject had not been identified or filed a complaint and Officer Graham had a reputation for embellishment in the department. Pl. Stmt. ¶ 5. He assured Officer Graham he would address the matter upon his return if the subject filed a complaint before then. Id. While Sgt. Ores was on vacation, Officer Graham reported the incident to Commander Spigolon, who opened an investigation. *Id.* at ¶ 5-7. Once Commander Spigolon was notified of the incident, Sgt. Ores had no further duty to investigate. Pl. Stmt. ¶ 6. Sgt. Ores became one of five subjects of the investigation. Pl. Stmt. ¶ 7.

As of October 2011, the Village of Dolton was home rule community, so disciplinary matters for police officers were governed the Rules of the Village of Dolton Board of Fire & Police Commission ("the Rules") and Illinois statute to the extent the statute did not conflict with the Rules. Plaintiff's Answer to Defendants' Statement of Facts, Paragraph 4 ("Pl. Ans. ¶ 4"). The disciplinary procedure used in the Village of Dolton was to (1) serve a notice of interrogation on an officer suspected of misconduct (2) interrogate the officer and complete the investigation and (3) based upon the information produced, decide whether to file formal charges against the officer before the Fire & Police Commission. Pl. Stmt. ¶ 19. It would then be the Fire & Police Commission's responsibility to determine what punishment, if any, was appropriate. Pl. Stmt. ¶ 29.

On October 25, 2011, Sgt. Ores was served with a "Notice of Interrogation" and submitted to the interrogation two days later. Pl. Stmt. ¶ 9. A Notice of Interrogation does not constitute "formal charges" as contemplated by Illinois statute or the Rules. Pl. Stmt. ¶ 9. Similarly, an interrogation is not a "hearing" as contemplated by Illinois statute or the Rules. An

interrogation is different than a hearing in that it is used to determine facts whereas in a hearing, the issue is whether a particular punishment is appropriate or if the accused is not guilty of an alleged rule violation. Pl. Stmt. ¶¶ 16, 17. Sgt. Ores was not informed of or provided with a copy of the evidence against him in the interrogation. Pl. Stmt. ¶ 8. He was not permitted to issue subpoenas, call his own witnesses or cross-examine any witnesses. Pl. Stmt. ¶ 20.

This was a termination case from the onset. Even before the interrogation, Jones was threatening to terminate Sgt. Ores even though Jones did not have the authority to make such a threat. Pl. Stmt. ¶ 13, 14, After the interrogation, Sgt. Ores did not discuss his case with anyone until February 21, 2015 when he was presented with a Disciplinary Notice that included a suspension of 15 days. Pl. Stmt. ¶ 22. Jones admits that he imposed the discipline rather than it being pursuant to a negotiation. Pl. Stmt. ¶ 25. He testified that Sgt. Ores was shocked at the length of the suspension and "expressed that he believed *my decision to impose a 15-day suspension* was too harsh." Pl. Stmt. ¶ 25. Therefore, Sgt. Ores was not provided with pre-disciplinary due process.

According to the Rules and the Collective Bargaining agreement, Sgt. Ores was guaranteed certain post-deprivation due process in the event Jones followed the rules and only suspended Sgt. Ores for five days or less. Pl. Stmt. ¶ 28. Because Jones admittedly exceeded his authority and suspended Sgt. Ores for 15 days, he had no avenue to pursue post-deprivation due process. Pl. Stmt. ¶¶ 28, 29. Specifically, the Rules allowed for an appeal of suspensions of five days or less and the Collective Bargaining agreement allowed Sgt. Ores to grieve suspensions of five days or less. *Id*. Jones knew that he did not have the authority to suspend Sgt. Ores for more than five days or even threaten termination. Pl. Stmt. ¶ 30. Also, the Rules did not provide for the option of waiving Sgt. Ores' due process rights. Pl. Stmt. ¶ 31. At any rate, Jones does

not recall Sgt. Ores agreeing to a 15-day suspension and he never asked of Sgt. Ores would agree to such a suspension. Pl. Stmt. ¶ 41.

Finally, the Village of Dolton is liable because as chief of police, Jones was a final policymaker for the village. Pl. Stmt. ¶ 46. He also was not simply implementing existing rules, but creating new ones. Pl. Stmt. ¶¶ 28, 29. Jones is also not subject to qualified immunity because he knew he could not charge Sgt. Ores with misconduct until after the interrogation and understood the rules relative to suspensions in excess of five days, but willfully ignored them. Pl. Stmt. ¶¶ 15, 18, 30. For these reasons and those below, the Court should enter summary judgment in Sgt. Ores' favor and against Jones and the Village of Dolton.

## ***STANDARD***

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to

the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## *ARGUMENT*

Summary judgment should be entered in Sgt. Ores' favor where there is no disputed issue of material fact that (1) Sgt. Ores was denied pre-disciplinary due process; (2) Sgt. Ores was denied post-deprivation due process; (3) Jones was a final policymaker for the Village of Dolton; and (4) Jones' is not subject to Qualified Immunity because he knew his acts exceeded his authority.

### *I. Sgt. Ores Was Denied Pre-Disciplinary Due Process*

Sgt. Ores should be granted summary judgment because it is undisputed that he was denied pre-disciplinary due process. The general rule is that "before one may be deprived of a constitutionally protected property interest in one's public employment, . . . due process requires that a pre-termination hearing be held." *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 503 (7th Cir. 1999) citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). An employer satisfies the requirements of due process if the employee receives: "(1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his side of the story." *Bodenstab v. Cnty. of Cook,* 569 F.3d 651, 664 (7th Cir. 2009). The purpose of requiring notice of pre-termination proceedings is to permit the employee to gather his thoughts about the allegations against him and formulate a response. *See Staples v. City of Milwaukee*, 142 F.3d 383, 386 (7th Cir. 1998). Thus, the Supreme Court held that "all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures . . ." *Loudermill*, 470 U.S. at 547-48. In this case, due process required that Sgt. Ores receive more than an "interrogation" because he would not be

able to avail himself of administrative review. See *Schacht*, 175 F.3d at 503 ("The required scope of the hearing depends on the other pre- and post-termination procedures available to the employee, but where...there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated."

It is undisputed that this was a termination case from the onset of the investigation. Jones and Kuzas both admit to this. Pl. Stmt. ¶¶ 13-15. Therefore, due process required that Sgt. Ores first receive written notice of the charges and that those charges be served upon the Fire & Police Commission. However, all Sgt. Ores received was a "Notice of Interrogation." Pl. Stmt. ¶ 9. Defendants admit that the "Notice of Interrogation" cannot be construed as "charges." Pl. Stmt. ¶ 9. Sgt. Ores was then entitled to receive an explanation of the employer's evidence against him. However, he was never provided with any of explanation of the village's evidence – he was interrogated with leading questions, some of which came with an instruction to "only accept yes or no answers." Pl. Stmt. ¶ 12. During discovery it was learned that Commander Spigolon had collected evidence related to the investigation but it was never explained to or shared with Sgt. Ores – something that he would have been entitled to in a hearing before the Fire & Police Commission. Pl. Stmt. ¶ 8.

Sgt. Ores was also entitled to a hearing. *Bodenstab v. Cnty. of Cook,* 569 F.3d 651, 664 (7th Cir. 2009). Indeed, although the Rules required that Sgt. Ores receive a hearing in front of the Fire & Police Commission, he was not provided with a hearing to determine his guilt or innocence. Pl. Stmt. ¶ 29. Instead, Sgt. Ores was interrogated. Defendants and Kuzas admit that an "interrogation" is not a hearing. Pl. Stmt. ¶¶ 16, 17. Additionally, Sgt. Ores was not permitted to subpoena, confront or cross-examine witnesses. Pl. Stmt. ¶ 20. And because there were no post-termination procedures available, Sgt. Ores was entitled to such process. See

*Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990) ("Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a tenured public employee"); *Staples v. City of Milwaukee, 142 F.3d 383, 387 (7th Cir. 1998)* ("The due process clause does not give a public employee the right to confront or cross-examine witnesses in a pre-termination hearing *where post-termination procedures are available*") (emphasis added). The Court should enter summary judgment in Sgt. Ores' favor to the extent he complains that Defendants failed to provide pre-deprivation due process.

## *II. Sgt. Ores Was Denied Post-Deprivation Due Process*

Summary judgment should be entered in Sgt. Ores' favor where Jones' decision to suspend Sgt. Ores for 15 days in derogation of the Rules left Sgt. Ores without any post-deprivation due process including an appeal to the Fire & Police Commission, a grievance or other state court remedies. There are two central questions that comprise every due-process claim, and as applied here, they are: (1) whether Sgt. Ores was deprived of a protected property interest, and if so, (2) whether an adequate post-deprivation remedy (or "process") was available to him. *See Price v. Bd. of Educ. of the City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014); *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804-05 (7th Cir. 2010). Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552(1965)). The Illinois Supreme Court has held that the public policy of the State has generally required some form of review of suspensions, and that if a statutory provision authorizing summary suspension for a period of one week or more is to survive constitutional attack on due process and equal protection grounds, it must provide for some type of review of such suspensions.

*Kropel v. Conlisk*, 60 Ill.2d 17, 25 (1975) (holding "that the public policy of this State, regardless of any constitutional considerations, is that a disciplinary suspension of more than 1 week of scheduled working days cannot be levied without providing some means of review of the suspension. Therefore, all of the above statutes and rules should be considered *in pari materia*."). In this case, the parties do not dispute Sgt. Ores had a property interest in his employment with the Village of Dolton, so the only remaining question is whether Sgt. Ores had an adequate post-deprivation remedy.

### ***A. Sgt. Ores' Suspension was Not Appealable to the Fire & Police Commission***

Sgt. Ores had no post-deprivation remedy through an appeal to the Fire & Police Commission because its Rules only allow for such an appeal of a suspension of five days or less. Pl. Stmt. ¶ 29. It is undisputed that if Jones had followed the Rules, he could have suspended Sgt. Ores for up to and including five days. Pl. Stmt. ¶ 29. In that case, Sgt. Ores would have been able to file an appeal with the Fire & Police Commission. *Id.* If Jones thought a longer suspension, or termination as in this case, was warranted, he was required to file formal charges with the Fire & Police Commission to ensure the commission then provided Sgt. Ores with a hearing. Pl. Stmt. ¶¶ 29, 30. If Jones had followed the Rules and referred Sgt. Ores case to the Fire & Police Commission, Sgt. Ores could have filed a complaint for administrative review if he felt the Commission's decision was unjust. But because Jones admittedly exceeded his authority, Sgt. Ores could no longer avail himself an appeal through the Fire & Police Commission.

### ***B. Sgt. Ores' Suspension was Not Grievable***

Sgt. Ores was similarly denied post-deprivation due process because Jones' improper suspension of Sgt. Ores rendered the decision outside of the scope of the relevant grievance

procedures. The Seventh Circuit has recognized that a union's grievance procedures can satisfy due process. See *Chaney v. Suburban Bus Division of the Regional Transportation Authority*, 52 F.3d 623, 628 (7th Cir. 1995) ("We have held, and other circuits agree, 'that grievance procedures created by collective bargaining agreements can satisfy the requirement of due process.'") (citations omitted); *Buttitta v. City of Chicago*, 9 F.3d 1198, 1206 (7th Cir. 1993) (the grievance procedure and arbitration offered by a public employee's union's collective bargaining agreement "adequately satisfies the requirements of due process"). In this case, Sgt. Ores had an expectation of due process through his union's grievance procedures, but only if Jones followed the Rules.

Under the collective bargaining agreement between the Village of Dolton and the Police Benevolent and Protection Association ("PBPA"), members could grieve a suspension of up to and including five days. Def. Stmt. ¶ 3; Pl. Stmt. ¶¶ 28, 31. In other words, Sgt. Ores could not grieve a suspension in excess of five days. This makes sense considering the chief of police is not expected to suspend an officer for more than five days. That way, an officer could seek review of a suspension (1) through the grievance procedures if less than five days or (2) through a hearing before the Fire & Police Commission if over five days. That's how the system was designed to work. And while Sgt. Ores did try to file a grievance, unsure of the requirements, neither Jones nor the Village ever responded to the grievance and it fell flat. Pl Ans. ¶ 26; Pl. Stmt. ¶ 33, 35. In fact, Sgt. Ores waited months for any information relative to the grievance. *Id.* at ¶¶ 35, 36. Because Jones admittedly exceeded his authority in suspending Sgt. Ores for more than five days and as a result Sgt. Ores could not avail himself of the grievance procedure, summary judgment should be entered in Sgt. Ores' favor.

### *C. Sgt. Ores had No Other Adequate State Law Remedies*

Sgt. Ores did not have adequate state law remedies to provide review of Jones' decision. Sgt. Ores could not avail himself of a complaint for administrative review because Jones' disciplinary decision was not an administrative decision. In Illinois, final decisions rendered by Boards of Fire and Police Commissioners are reviewable under the Administrative Review Law. *Burgess v. Bd. of Fire and Police Comm'rs*, 655 N.E.2d 1157, 1160 (Ill.1995) (emphasis added). Because Jones' disciplinary decision was unilateral and not that of an administrative agency, Sgt. Ores could not seek review in that forum.

Moreover, a common law writ of certiorari was also unavailable. A common law writ of *certiorari* generally serves as a method for obtaining judicial review of administrative actions. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 440-41, (1998); *Lapp v. Village of Winnetka*, 359 Ill. App. 3d 152, 166 (2005). A common law writ of *certiorari* is a general method for obtaining court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2002)), and provides for no other form of review. *Dubin v. Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 497-99 (1989). In this case, the decision to discipline Sgt. Ores was not an administrative decision so a writ of certiorari was not an adequate, or available, state law remedy. Pl. Stmt. ¶ 26.

A writ of mandamus was also unavailable based upon the facts of this case. *Mandamus* is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill. App. 3d 1130, 1133 (2005). "*Mandamus* cannot be used to direct a public body to reach a particular decision or to exercise its discretion in a particular manner." *Jamison v. City of Zion*, 359 Ill.

App. 3d 268, 271 (2005). *Mandamus* will issue only where the plaintiff has fulfilled his burden (*Mason v. Snyder*, 332 Ill. App. 3d 834, 840 (2002)) to set forth every material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief. *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109 (1997). In this case, Sgt. Ores is challenging not only the failure of Jones to provide him with due process, but the decision to discipline him at all, which is a discretionary decision. Pl. Ans. ¶ 26. Therefore, a writ of *mandamus* was not available to Sgt. Ores.

### ***III. The Village of Dolton is Liable Because Chief Jones was a Final Policymaker***

Summary Judgment should be entered against the Village of Dolton because Jones' acts constituted an official policy of Dolton. There are three identifiable instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation, *see, e.g., Monell*, 436 U.S. at 690; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123 (emphasis added). It is also true that a single act or decision of a final policymaker can establish municipal policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

In this case, Jones was the Chief of Police. Pl. Stmt. ¶ 2. He knew that he did not have the authority to suspend Sgt. Ores in excess of five days or to even threaten Sgt. Ores with a suspension in excess of five days. Pl. Smt. ¶¶ 14, 17. Indeed, the village attorney informed

Jones that Sgt. Ores case would have to be referred to the Fire & Police Commission, but Jones ignored the advice made a unilateral "decision to impose a 15-day suspension." Pl. Stmt. ¶ 15. By doing so he was not implementing pre-existing rules, but creating a new disciplinary policy for the Village. Former Chief Jones was a "policymaker" for the Village, in that he had the authority to make policy-based decisions without seeking approval from other members of the Village's administration. Pl. Stmt. ¶ 46. As a "policymaker" for the Village, each act committed by Jones in the furtherance of his duties that constitutes or results in a constitutional deprivation is thereby the "policy" of the Village. Pl. Stmt. ¶ 46.

### ***IV. Jones' is Not Subject to Qualified Immunity Because He Knew His Acts Exceeded His Authority***

Jones is not subject to qualified immunity where he knew and in fact admits that the act of suspending Sgt. Ores in excess of five days exceeded the authority provided to him under the Rules. Pl. Stmt. ¶ 18, 30. Qualified immunity is a defense available to government officials (including police officers) that affords them protection from civil liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)**;** *Lee v. Young*, 533 F.3d 505, 512 (7th Cir.2008)**.** Whether a defendant enjoys qualified immunity is determined by a two-step process. The court must first determine whether a plaintiff has alleged a violation of a constitutional right. If the answer is yes, the court must go on to consider whether that right was clearly established at the time. *Saucier v. Katz,* 533 U.S. 194, 210 (2001)**.** As to the second inquiry, the contours of the constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lee,* 533 F.3d at 512**.** Not only did Jones violate Sgt. Ores' constitutional right to procedural due process, but Jones actually admits he willfully violated that right.

At all relevant times, the Fire & Police Commission Rules only allowed the Chief of Police to suspend an officer for up to and including five days. Pl. Stmt. ¶ 29. If the Chief of Police felt it appropriate to suspend an officer for more than five days, the matter had to be referred to the Fire & Police Commission and the officer would be entitled to a hearing. Pl. Stmt. ¶ 29. Jones admits he knew that he only had the authority to suspend Sgt. Ores for five days or less. Pl. Stmt. ¶ 30. Jones also knew that he did not have the authority to threaten an officer with discipline of a suspension of greater than five days up to and including termination. Pl. Stmt. ¶ 30. Despite this, Jones threatened Sgt. Ores with termination even before the interrogation. Pl. Stmt. ¶¶ 13-15. The attorney representing Jones for purposes of the investigation even warned Jones that the matter had to go to the Fire & Police Commission for the discipline he was seeking. Pl. Stmt. ¶ 15. Despite this, Jones proceeded to suspend Sgt. Ores for 15 days. Further, there is nothing in the Rules that permitted Jones to negotiate a waiver of Sgt. Ores' due process rights. Pl. Stmt. ¶ 31. Moreover, there is nothing in the record to suggest Jones was unfamiliar with the rules governing the police department or did not know Sgt. Ores was entitled to a hearing if he wanted to terminate or suspend him for more than five days. Jones was clearly aware that Ores was entitled to formal charges and a hearing and willfully ignored Ores' rights before instituting the 15-day suspension. Summary Judgment should be entered in Ores' favor and against both defendants.

WHEREFORE, Plaintiff GLENN ORES respectfully prays that this Honorable Court enter judgment in his favor and against Defendants VILLAGE OF DOLTON and BOLDEN JONES and for any other relief the Court deems appropriate.

Respectfully submitted,

WALSH LAW GROUP, P.C.

By: ___/s/ Patrick J. Walsh __
Patrick J. Walsh, Esq.

Patrick J. Walsh, Esq.
WALSH LAW GROUP, P.C.
30 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
(312) 466-7683
ARDC No. 6287629
pw@thewalshlawgroup.com